# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID No. 1408011166 |
| | ) | |
| ANTHONY KELSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: November 15, 2016
Decided: February 2, 2017
Date Corrected: April 4, 2017

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED.

Zachary D. Rosen, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Anthony Kelson, Howard R. Young Correctional Center, Wilmington, Delaware, *pro se.*

PARKER, Commissioner

This 2nd day of February 2017, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND, FACTS AND PROCEDURAL HISTORY

1. On November 24, 2014, Defendant Anthony Kelson was indicted on a total of nine charges. These charges consisted of four counts of drug dealing, two counts of aggravated possession, possession of ammunition by a person prohibited, and two counts of illegal possession of a controlled substance. The four counts of drug dealing each carried a minimum mandatory sentence of two years. If convicted at trial on all the counts in the indictment, Defendant was facing jail time of at least eight years (minimum mandatory) and a maximum sentence of over 100 years at Level V.

2. The charges stemmed from a July 2014 drug investigation that culminated in searches conducted in August 2014 at two residences and of Defendant's vehicle resulting in the finding of a total of over 20 grams of heroin and a number of rounds of ammunition. The investigation revealed that Defendant was the primary subject selling the heroin from the two residences and vehicle.[1]

3. The State's case against Defendant was strong. Defendant was essentially defenseless.[2]

4. At the time of the subject offenses, Defendant was on probation for three prior convictions. In Criminal Action Number 11120005071, Defendant was on probation resulting from a conviction for Drug Dealing Heroin at a Tier 2 Level, and in Criminal Action Number 1301013163, Defendant was on probation on convictions of Aggravated

---

[1] Superior Court Docket No. 1, Exhibit B- Affidavit of Probable Cause
[2] See, Superior Court Docket No. 18, Affidavit of Counsel in response to Rule 61 Motion at ¶ 2.

Possession and Driving Under the Influence of Alcohol. The new charges also triggered violations of these probations ("VOP").

5. Apparently, a Fast Track hearing was held in September 2014, and a two year plea offer was extended to Defendant to resolve his new charges and one of his prior cases involving VOPs. The State then realized that there was a second case involving a VOP, and that the second case had not been considered before the plea offer was extended. The plea offer was then withdrawn.[3]

6. On November 26, 2014, a second Fast Track hearing was conducted. At this time Defendant was offered a plea that would resolve all the new charges and all the pending VOPs. As previously stated, two of the VOPs stemmed from convictions in one case, and one VOP stemmed from a conviction in another case, for a total of three pending violations stemming from two cases. Thus, the plea offer was to resolve all of the new charges and all of the three pending VOPs with the State recommending a sentence of 5 years at Level V.[4] The plea offer required that Defendant plead guilty to one count of the indictment, drug dealing heroin at a Tier 4 Level, and admit to the three violations of probation.

7. Defendant rejected the plea.

8. On April 20, 2015, Defendant accepted a third plea offer. Defendant agreed to plead guilty to one count of the indictment, drug dealing heroin at a Tier 4 Level. As part of the plea agreement, the State agreed to dismiss the remaining eight counts of the indictment against Defendant.[5]

---

[3] See, Defendant's submission dated September 26, 2016- Superior Court Docket No. 21.
[4] Rejected Plea Agreement dated November 26, 2014.
[5] April 20, 2015 Plea Agreement.

9. Also as part of the plea agreement, the parties agreed to open sentencing after a presentence investigation was completed. On the charge for which Defendant pled guilty, he was facing a two year minimum mandatory sentence at Level V and a maximum sentence of 25 years at Level V. The sentencing guidelines for 20 or more grams of heroin are 4 to 10 years at Level V.[6]

10. The plea agreement did not include the resolution of the pending VOPs. The parties agreed that Defendant would first be sentenced on the new drug dealing charge, that Defendant would acknowledge that he was in violation of his probation as a result of this conviction, and that sentencing on the three VOPs would be deferred until after sentencing on the new drug dealing charge.[7]

11. On December 11, 2015, following a presentence investigation, Defendant was sentenced to 25 years at Level V, suspended after four years, following by two years at Level IV, suspended after 6 months, followed by 18 months at Level III.

12. Following Defendant's sentencing on the new charges, defense counsel withdrew as counsel.[8]

13. On January 13, 2016, Defendant, represented by a public defender, was sentenced on the three VOPs. Defendant was sentenced to 5 years at Level V on the drug dealing probation violation, one year at Level V suspended for one year at Level IV on the Aggravated Possession violation, and one year at Level V suspended for one year at Level III on the DUI violation.

14. Defendant did not file a direct appeal to the Delaware Supreme Court.

---

[6] April 20, 2015 Plea Agreement; April 20. 2015 Plea Transcript, at pgs 6-7.
[7] December 11, 2015 Sentencing Transcript, at pgs. 6-7, 25; Criminal ID No. 1301013163 VOP Hearing, at pg. 3-4.
[8] Criminal Action No. 1112005071- Superior Court Docket No. 16 & 17; Criminal Action No. 1301013163- Superior Court Docket No. 19 & 20.

## DEFENDANT'S RULE 61 MOTION

15.     On March 26, 2016, Defendant filed the subject motion for postconviction relief raising one claim.[9] Defendant claims that his counsel was ineffective for not properly communicating case information to him. Defendant claims that if counsel had properly communicated with him, Defendant would have accepted the 5 year plea deal offered in November 2014.

16.     Defendant does not challenge that the prudent course of action was to accept a plea. Defendant realizes that the State's case against him was strong and that he was facing a significantly longer period of incarceration if convicted of all the charges. Defendant also does not contest that the plea he accepted on April 20, 2015 was proper in all respects.

17.     Defendant's contention is that if he had been better advised by counsel he would have accepted the November 26, 2014 plea offer in which the State agreed to recommend a total of 5 years to resolve all the new pending charges and the pending VOPs. Instead, he accepted the April 20, 2015 plea offer which resulted in 4 years of unsuspended Level V time on the pled to charge, with sentencing delayed for the VOPs, that subsequently resulted in an additional 5 years of Level V time.

18.     Before making a recommendation, the Commissioner enlarged the record by directing Defendant's trial counsel to submit an Affidavit responding to Defendant's ineffective assistance of counsel claim. The Commissioner also requested supplemental submissions by Defendant and defense counsel in order to further flesh out their respective positions on the issue.[10]

---

[9] Superior Court Docket No. 14.
[10] Super.Ct.Crim.R. 61(g)(1) and (2).

19. The two-part *Strickland* test for ineffective assistance of counsel applies to challenges to guilty pleas.[11] In a case where the defendant claims that he would have accepted an earlier plea offer but for the ineffective assistance of counsel, the defendant must establish that his counsel's conduct was deficient, and must also establish that he would have accepted the offer to plead pursuant to the terms earlier proposed.[12]

20. The performance prong of the *Strickland* test for ineffective assistance of counsel requires the defendant to show that counsel's representation fell below an objective standard of reasonableness.[13] To establish the prejudice prong, it is necessary to show that there is a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.[14]

21. In the context of pleas, to establish the prejudice prong of the *Strickland* test for ineffective assistance of counsel, a defendant must show that the outcome of the plea process would have been different with competent advice.[15] If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it, and if that right is denied, prejudice can be shown if the loss of the plea led to a conviction on more serious charges or the imposition of a more severe sentence.[16]

22. Turning to the subject case, Defendant contends that at his initial court Fast Track Hearing in September 2014, a two year plea deal was offered, accepted, and signed by all

---

[11] *Lafler v. Cooper,* 132 S.Ct. 1376, 1384-85 (2012), citing, *Strickland v. Washington,* 466 U.S. 668 (1984).
[12] *Missouri v Frye,* 132 S.Ct. 1399, 1409-1410 (2012) , *Lafler v. Cooper,* 132 S.Ct. 1376, 1384-85 (2012).
[13] *Lafler v. Cooper,* 132 S.Ct. 1376, 1384-85 (2012).
[14] *Missouri v Frye,* 132 S.Ct. 1399, 1409-1410 (2012) , *Lafler v. Cooper,* 132 S.Ct. 1376, 1384-85 (2012).
[15] *Lafler v. Cooper,* 132 S.Ct. 1376, 1380-1381 (2012).
[16] *Missouri v Frye,* 132 S.Ct. 1399, 1409-1410 (2012) , *Lafler v. Cooper,* 132 S.Ct. 1376, 1384-85, 1387 (2012).

5

parties. The plea offer included the resolution of both the new charges and VOPs. However, it was realized before the plea could be finalized, that one of the VOPs had not been considered before the plea offer was extended. The State withdrew the plea offer since it was based on an incomplete record.[17] Defendant claims that at that time, defense counsel offered his professional opinion that Defendant would likely receive two years for his new charges and one to one and a half additional years on his VOPs, one of which would likely be dropped.[18]

23.    In response to this contention, defense counsel represents that he never offered any professional opinion as to what Defendant would likely receive in terms of a sentence for the pending charges or for the pending violations of probation. Defense counsel further represents:

> Not knowing all of the circumstances of his prior probation and his compliance, not knowing which judge was the sentencing judge and not knowing what recommendation the probation officer would propose, it would have been "pure folly" to opine as claimed. Projecting likely sentences is tantamount to predicting the point spread of a professional football game, and it is "stupid" to so engage. Furthermore, I had no basis to indicate that the other Violation of Probation would "likely" be dropped. That projection would not have been offered. Although, again, I don't remember the specific verbiage used, ordinarily, I would have indicated that the judge assessing the Violation of Probation would, ordinarily, take into consideration the sentence received on the newly-formed charges. To project the specific sentence in futuro is not something that I would do.[19]

24.    Defense counsel is a very seasoned and experienced criminal defense attorney. The plea offer extended at the September 2014 Fast Track Hearing was apparently

---

[17] See, Defendant's submission dated September 26, 2016- Superior Court Docket No. 21.

[18] Defendant's submission dated September 26, 2016- Superior Court Docket No. 21.

[19] Affidavit of Defense Counsel dated November 9, 2016- Superior Court Docket No. 23.

withdrawn by the State to obtain more information on one of the pending VOPs which apparently had not been considered. Defense counsel's conduct had nothing to do with the withdrawing of the plea. Defendant could not have accepted it whether he wanted to or not. It was off the table.

25. Although Defendant contends that counsel advised at the first Fast Track hearing that he would likely receive two years on the new charges and one to one and half years on his VOPs, one of which would likely be dropped, and then "reaffirmed that belief" at the next Fast Track hearing, the Court accepts defense counsel's representation in his Affidavit that he did not. The Court notes that it is highly suspect that a seasoned attorney would express an opinion as to a specific sentence especially when one of the VOPs was just discovered and when counsel had very little information about that VOP at the time.

26. Defendant claims that at the second Fast Track Hearing on November 26, 2014, a 5 year plea offer was made, and that defense counsel "reaffirmed his belief that three to three and a half total years at Level Five incarceration was the most probable outcome." Defendant further states that defense counsel advised him to reject the plea, stating that 5 years was "worst case scenario, a trial scenario." Defendant contends that based on counsel's advice, he rejected the plea offer.[20]

27. Initially, it is noted that Defendant's argument makes no logical sense, since if he went to trial after rejecting the plea offer and was convicted, he would face 8 years of minimum mandatory prison time. Therefore, the *best* case trial scenario would be an 8 year prison sentence, and a *worst* case trial scenario would be over 100 years at Level V.

28. In his Affidavit in response to Defendant's Rule 61 motion, defense counsel also represented:

---

[20] Defendant's submission dated September 26, 2016- Superior Court Docket No. 21.

> I never, ever, never, ever advise a client whether to accept or reject a plea offer. I explain the options, explain the probabilities IF I HAVE A REASONABLE BASIS FOR DOING SO AND ASK THE CLIENT WHETHER OR NOT THE CLIENT HAS ANY QUESTIONS. I answer them as best as I am able. I do not offer a recommendation, and when asked, I refuse to offer a recommendation. Instead, I indicate that it is the client's life (figuratively) that is involved, and it would be presumptuous of me to make recommendations when I am not the one that pays the penalty for a mistake.[21]

29. Defense counsel adamantly denies counseling Defendant to reject the 5 year plea offer.

30. Defendant contends that he was not made aware of the sentencing guidelines for the drug dealing charge in the plea agreement at the time he rejected the November 26, 2014 plea offer. This contention is directly at odds with the written plea offer itself which expressly stated that Defendant was facing a 2 year minimum mandatory sentence on the drug dealing charge and that the sentencing guidelines provided for 4-10 years at Level V.[22] There is no doubt that Defendant saw the written plea offer because he signed it.[23]

31. The 5 year plea offer was a reasonable offer to be seriously considered but was not so great that it would have been unreasonable not to accept. At the time the November 26, 2014 plea offer was made and being considered, defense counsel was not aware that the probation officer would be recommending that Defendant be sentenced to all of his back time, 5 years at Level V, on his VOP for the drug dealing conviction.[24] Had defense counsel been aware of the probation officer's intentions as to this sentence

---

[21] Affidavit of Defense Counsel dated November 9, 2016- Superior Court Docket No. 23.
[22] See, November 26, 2014 Rejected Plea Agreement.
[23] November 26, 2014 Rejected Plea Agreement.
[24] Affidavit of Defense Counsel dated November 9, 2016- Superior Court Docket No. 23.

recommendation on the drug dealing VOP that would, of course, have factored into the analysis when evaluating the plea offer.[25]

32.     Without knowledge of the probation officer's position, it was not unreasonable to assume that Defendant was facing a minimum mandatory sentence of 2 years, with a sentencing guideline of 4-10 years on the new charge, and that after taking into consideration the sentence on the new charge, the court would add some additional prison time on the VOPs. Under the circumstances then existing, the rejection of the 5 year recommended plea offer was not patently unreasonable.

33.     After the November 26, 2014 plea offer was rejected, Defendant accepted a plea offer on April 20, 2015. The April 20, 2015 plea offer was to the same drug dealing charge as that offered in the November 26, 2014 plea offer. The November 26, 2014 plea offer included a 5 year sentence recommendation by the State and the inclusion of the VOPs. In the April 20, 2015 plea offer, there was no sentence recommendation by the State and the VOPs were not included.

34.     At the time the April 20, 2015 plea offer was accepted by Defendant, it was an open issue as to which was the better of the two offers. It was certainly conceivable that the April 20, 2015 plea could result in Defendant receiving as little as 2 years (minimum mandatory) at Level V on the new charge, with no additional prison time on the VOPs. It was also possible that Defendant would receive a greater sentence than the 2 years (minimum mandatory) Level V on the new charge, and some jail time on the VOPs. In accepting the April 20, 2015 plea offer, Defendant clearly gambled as to what would be his ultimate sentence.

---

[25] Affidavit of Defense Counsel dated November 9, 2016- Superior Court Docket No. 23.

9

35. At the time of sentencing on the new charge, on December 11, 2015, the sentencing judge made a comment that the probation officer was seeking all of the back time, amounting to five years at Level V, on one of the VOPs.[26] Defense counsel was not previously aware of the probation officer's recommendation.[27]

36. Had Defendant accepted the November 26, 2014 plea offer with a sentence recommendation by the State of 5 years to resolve all the new charges and the pending VOPs, who knows whether the sentencing judge would have followed the recommendation contained in the plea agreement. A sentence recommendation in a plea agreement is not binding on the court and the court could have imposed a sentence that exceeded the sentencing recommendation.[28] The court is not bound by any sentence recommendation.[29] As long as a sentence imposed is within the statutory limits, it may not be challenged merely because it exceeded the sentence recommendation contained in the plea agreement.[30]

37. Additionally, the court was not required to follow the probation officer's recommendation on the VOP. Recommendations are just that - recommendations. The court has the discretion to deviate from the recommendations of interested parties and impose a sentence which it believes is just as long as the sentence is within the statutory limits.

38. Who is to say that the best course of action would have been to accept the November 26, 2014 plea offer. Who is to say whether the sentencing court would have

---

[26] December 11, 2015 Sentencing Transcript, at pg. 17-18.
[27] Affidavit of Defense Counsel dated November 9, 2016- Superior Court Docket No. 23.
[28] See, Superior Court Criminal Rule 11(e)(1)(B); *Fisher v. State,* 2003 WL 423449, *1 (2003); *Wingate v. State,* 2004 WL 692050, *2 (2004).
[29] *Id.*
[30] *Id.*

accepted the five year sentence recommendation or would have imposed a greater sentence. Decisions are made in real time without the benefit of hindsight. Here, at the time the November 26, 2014 plea offer was being considered, defense counsel discussed Defendant's options and explained the probabilities based on the factors known to him at the time. Had additional facts been known, the probabilities discussed may have been different, but additional facts were not known. Defense counsel did not make any recommendation as to whether the plea should be accepted or rejected. Defense counsel answered any questions Defendant had so that an informed decision could be made based on information known to defense counsel at the time the plea was being considered. After discussing the offer with counsel, Defendant made the decision to reject the November 26, 2014 plea.

39. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks.[31] There is no expectation that competent counsel will be a flawless strategist or tactician.[32] A defense attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.[33]

40. Many factors come into play when a court is making a decision on the appropriate sentence for a particular defendant. At the end of the day, Defendant received a nine year Level V sentence. Four years on the new charge, and five years on his VOPs. Who knows what factors may have contributed to the sentence imposed. Predicting a sentence is an inexact science and no one has a crystal ball. Defendant rejected a five year plea offer. At the time the five year plea offer was made, the facts known were considered

[31] *Premo v Moore,* 131 S.Ct. 733, 739-744 (2011).
[32] See, *Harrington v. Richter,* 131 S.Ct. 770, 787-792 (2011).
[33] *Id.* at 787-788.

11

and weighed, and the plea was rejected. That decision to reject the plea was not patently unreasonable under the facts and circumstances known at the time. Although disappointed with the end result, it does not appear that defense counsel's representation fell below an objective standard of reasonableness. Counsel was not deficient in his representation of Defendant.

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be denied.

**IT IS SO RECOMMENDED.**

Commissioner Lynne M. Parker

oc:     Prothonotary
        Joseph A. Hurley, Esquire